**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**DANIEL LEDBETTER**

**Plaintiff,**

**v.**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security**

**Defendant.**

**Civil Action No. WGC-15-714**

# MEMORANDUM OPINION

Plaintiff Daniel Ledbetter ("Mr. Ledbetter" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 4, 6.[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment (ECF No. 10) and Defendant's Motion for Summary Judgment (ECF No. 11). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

[1] The case was subsequently reassigned to the undersigned.

1. **Background**.

On June 15, 2011 Mr. Ledbetter protectively filed applications for DIB[2] and SSI alleging a disability onset date of August 25, 2010 due to chronic obstructive pulmonary disease ("COPD"), affective disorder, anxiety related disorder and disorder of the back and shoulders. R. at 15. Mr. Ledbetter's applications were denied initially on November 15, 2011. R. at 59-79. On December 27, 2011 Mr. Ledbetter requested reconsideration. R. at 111-12. On May 21, 2012 the applications were denied again. R. at 113-18. On July 23, 2012 Mr. Ledbetter requested a hearing by an Administrative Law Judge ("ALJ"). R. at 127-28. On October 1, 2013 an ALJ convened a hearing. R. at 33-55. Mr. Ledbetter was represented by counsel. With the advice and consent of his counsel, Mr. Ledbetter amended his alleged onset date of disability to July 15, 2011, his 50th birthday. R. at 37-38. During the hearing the ALJ obtained testimony from Mr. Ledbetter and a vocational expert ("VE"). In the November 5, 2013 decision the ALJ found Mr. Ledbetter has not been under a disability as defined in the Social Security Act, from July 15, 2011 through the date of the decision. R. at 26-27. On November 20, 2013 Mr. Ledbetter requested a review of the hearing decision. R. at 7-9. On January 9, 2015 the Appeals Council denied Mr. Ledbetter's request for review, R. at 1-3, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Mr. Ledbetter's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920 (2013). Mr. Ledbetter bears the burden of demonstrating his disability as to the first four steps. At step five the burden shifts to the Commissioner. *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

[2] "The claimant meets the insured status requirements of the Social Security Act through September 30, 2015." R. at 15. *See also* R. at 62, 202, 208, 224.

At step one the ALJ found Mr. Ledbetter has not engaged in substantial gainful activity since July 15, 2011, the amended alleged onset date. R. at 15. The ALJ concluded at step two that Mr. Ledbetter had the following severe impairments: "chronic obstructive pulmonary disease (COPD), affective disorder, anxiety related disorder, disorder of the back and shoulders." *Id.* The ALJ further found at step two that all other alleged medically-determinable impairments including obstructive sleep apnea, substance abuse disorder and amaurosis fugax[3] are nonsevere "because they did not exist for a continuous period for twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous functional limitations in the claimant's ability to perform either exertional or nonexertional work-related activities." R. at 16.

At step three the ALJ found Mr. Ledbetter does not have an impairment or combination of impairments which meets or medically equals a listed impairment. The ALJ specifically considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.02 (chronic pulmonary insufficiency), 12.04 (affective disorders) and 12.06 (anxiety-related disorders). With regard to the musculoskeletal system, the ALJ found the medical evidence clearly establishes Mr. Ledbetter's joint disease of the left shoulder. There is however no evidence he suffers from any joint disease in his right extremity. Mr. Ledbetter's joint disease of the left shoulder does not result in an inability to perform fine and gross movements effectively and therefore, his joint disease does not satisfy the criteria of Listing 1.02. R. at 16. As for Listing 1.04, although medical evidence establishes Mr. Ledbetter's degenerative disc disease of the lumbar and cervical spine, this impairment does not meet or medically equal the listing since

---

[3] "Amaurosis fugax is a temporary loss of vision in one eye due to a lack of blood flow to the retina." MedlinePlus, https://www.nlm.nih.gov/medlineplus/ency/article/000784.htm (last visited March 21, 2016).

"the record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation." *Id.*

As for Mr. Ledbetter's COPD, there is medical evidence containing the results of pulmonary function testing. "However, the claimant's performance on pulmonary function testing is significantly higher than the threshold necessary to meet the criteria of listing 3.02." *Id.*

With regard to Mr. Ledbetter's mental impairments, *i.e.*, affective disorder and anxiety-related disorder, the ALJ specifically considered Listings 12.04 and 12.06. In accordance with 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ followed a special technique to evaluate the severity of Mr. Ledbetter's affective disorder and anxiety-related disorder. The four broad functional areas — (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace and (4) episodes of decompensation — are known as the "paragraph B" criteria for most of the mental disorders listed in Appendix 1. At the time of the hearing Mr. Ledbetter resided with a friend suffering from terminal cancer. In exchange for a temporary residence, Mr. Ledbetter performed routine household chores. "Additionally, the claimant's medical records document[] the claimant drives regularly and has been taking classes at the College of Southern Maryland purs[u]ing a degree in business after having completed A+ certificate in information technology." R. at 17. Upon consideration of these circumstances, the ALJ determined Mr. Ledbetter has a *mild* restriction in activities of daily living.

With regard to social functioning, the ALJ found Mr. Ledbetter has *moderate* difficulties. Mr. Ledbetter testified about not having friends. He becomes panicky around crowds of people. The medical records denote Mr. Ledbetter's tendency towards isolation and being introverted. His social functioning and activities have further decreased with his efforts to maintain his

sobriety. "However, despite the claimant's adjustment to a life free of alcohol, the claimant retains sufficient functioning in this domain to attend AA meetings, interact with his two sons, attend classes in-person at the College of Southern Maryland, and go to the library to do his academic work." *Id.*

As for concentration, persistence, or pace, the ALJ determined Mr. Ledbetter has *moderate* difficulties.

> At the hearing, the claimant testified he has problems with concentration and focusing. As an example, the claimant stated he is unable to remember what he has read even with multiple attempts at reading. On mental status examination, the claimant's medical providers have described the claimant's memory as good, poor, and intermittent (Exhs. 4F, 5F & 14F). Despite these findings, the claimant retains sufficient functioning in this domain to attend the College of Southern Maryland full-time to pursue a degree in business and turn [in] his academic assignments on time (Exhs. 8F/23-26 & 9F).

*Id.* Fourth, the ALJ found Mr. Ledbetter has not experienced any episodes of decompensation. *Id.* Because Mr. Ledbetter's affective disorder and anxiety-related disorder do not cause two "marked" limitations or, one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied. The ALJ then proceeded to consider the "paragraph C" criteria.

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The undersigned finds the medical evidence of record does not satisfy the "paragraph C" criteria of listing section 12.04 or 12.06 based upon the claimant's variable living arrangements and full-time student status. Thus, the record is devoid of evidence of episodes of decompensation, potential episodes of decompensation, or the inability to function outside a highly supportive living arrangement or outside the area of the claimant's home.

R. at 17-18.

Having completed the special technique for evaluating Mr. Ledbetter's mental impairments, the ALJ proceeded to determine Mr. Ledbetter's residual functional capacity ("RFC"). The ALJ found Mr. Ledbetter had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) except,

> the claimant can perform postural movement occasionally[4]; the claimant is limited to simple, routine, unskilled tasks with occasional brief superficial interaction with the public, co-workers, and supervisors; the claimant must avoid working around hazards such as moving dangerous machinery and unprotected heights; and the claimant must avoid concentrated exposure to respiratory irritants and extreme temperatures and humidity.

R. at 18.

At step four the ALJ noted Mr. Ledbetter's past relevant work as a van driver. Although *The Dictionary of Occupational Titles (D.O.T.)* defined this work as semiskilled and performed at the medium exertional level, the VE testified, based on Mr. Ledbetter's description, he actually performed this work at the heavy exertional level. Irrespective of whether the exertional level is medium or heavy, Mr. Ledbetter is unable to perform this past relevant work based on his RFC. R. at 24.

Finally, at step five, the ALJ considered Mr. Ledbetter's age (50 years old on the amended alleged disability onset date, defined as an individual closely approaching advanced age), education (high school; able to communicate in English), past work experience (transferability of job skills is not material to determination) and his RFC (light work with various limitations). The ALJ found the Social Security Administration met its burden of proving that Mr. Ledbetter is capable of performing various other jobs[5] that exist in significant

[4] Occasionally means from very little up to one-third of the time or, no more than one-third of the work day. *SSR 83-14*, 1983 WL 31254, at *2, 4 (S.S.A.)

[5] Garment bagger, mail sorter and price marker.

numbers in the national economy, relying on the testimony of the VE. R. at 25-26, 49-51. Accordingly, the ALJ concluded that Mr. Ledbetter has not been under a disability, as defined by the Act, from July 15, 2011 through the date of the decision. R. at 26.

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Mascio*, 780 F.3d at 634; *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

4. **Discussion.**

Plaintiff claims the ALJ erred in two respects: (a) failed to properly perform a function-by-function assessment of Mr. Ledbetter's ability to perform physical and mental demands of work in accordance with *Social Security Ruling 96-8p*[6] and (b) failed to include any limitation regarding Mr. Ledbetter's concentration, persistence, or pace in the RFC assessment or in the hypothetical question posed to the VE. These issues are addressed below.

---

[6] Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (1996 WL 374184 (S.S.A.)).

*A. Social Security Ruling 96-8p*

As the Fourth Circuit has observed, there is not a *per se* rule requiring a remand when an ALJ fails to perform an explicit function-by-function analysis in accordance with Social Security Ruling ("SSR") 96-8p. *Mascio*, 780 F.3d at 636. "'[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam).

Plaintiff claims the ALJ failed to properly perform a function-by-function assessment of Mr. Ledbetter's ability to perform the physical and mental demands of work. ECF No. 10-1 at 6. The Regulations define the physical and mental demands of work as follows:

> *Physical abilities.* When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.
>
> *Mental abilities.* When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c).

A review of the ALJ's decision reveals the ALJ properly performed a function-by-function assessment of Mr. Ledbetter's ability to perform the physical and mental demands of

work, in light of his impairments, based on Mr. Ledbetter's capacity to perform relevant functions. The ALJ's assessment states,

> Though the claimant's physical impairment medical records clearly support the existence of the claimant's physical impairments, the findings on physical and radiological examination do not support the claimant's ability to stand or walk is limited. As identified above, the claimant's physical examinations are most notable for transient periods of a decreased range of motion in the claimant's neck and upper extremity joints without significant abnormal findings in the claimant's lower extremities or lumbar spine. Additionally, the claimant's x-rays, MRIs, and CTs, though notable for identifying some abnormal findings in the claimant's lumbar spine reveal the most significant abnormal findings are in the claimant's left shoulder joint and cervical spine. Essentially, the objective medical findings do not support the claimant has any limitation in his ability to walk or stand. In regards to the claimant's ability to lift, the claimant's reduced range of motion in his left shoulder and the abnormal imaging of the claimant's cervical spine supports his disclosure at the hearing that his doctor has advised him that he should not lift more than 20 pounds occasionally. Additionally, the undersigned finds the combination of the claimant's left shoulder impairment and spinal impairment could reasonably limit the claimant's ability to perform all postural movements [to no] more than occasionally.
>
> Concerning the claimant's COPD, the objective medical evidence establishes the claimant has COPD but the claimant's physicians describe it as "mild" based upon pulmonary function testing and physical examination. Considering the claimant's activities of daily living, which include assisting in the care of an individual suffering from terminal cancer, the claimant's continued smoking, and conservative treatment, the record does not support that this impairment results in anything more than some environmental limitations.
>
> Turning to the claimant's mental impairments, the record supports the claimant['s] testimony that he stopped using alcohol as of the amended alleged onset date and sought and received significant substance abuse treatment for his substance abuse disorder. The undersigned finds this proactive step by the claimant to improve his mental health commendable. The undersigned also finds the claimant's decision to take college level courses to improve his employment possibility commendable. However, the claimant's ability to take college level courses is inconsistent with the

> assertion of the inability to the mental demands of substantial gainful activity on a regular and consistent basis. Though it is more than reasonable the claimant does not currently retain sufficient mental functioning to perform complex work, the undersigned finds the claimant's activities of daily living and mental status examination findings support he can perform simple, routine, unskilled work. Furthermore, the claimant's ability to attend his classes in person and understanding of the need to end his relationship with his significant other, who was continuing to abuse alcohol, once he obtained his sobriety, does not support the degree of social limitation alleged.
>
> In sum, the claimant's relatively good physical examinations, mental status examinations, good activities of daily living, and ability to successfully function as a full-time college level student do not support the degree of limitation alleged (20 CFR 404.1529, 416.929, and SSR 96-7p).

R. at 23-24. The undersigned finds no error as alleged by Plaintiff.

*B. Omitting Moderate Limitation in Concentration, Persistence, or Pace from RFC Assessment and Hypothetical Question to VE*

At step three the ALJ determined Mr. Ledbetter had a moderate limitation in concentration, persistence, or pace. Despite this determination Plaintiff claims the ALJ failed to adequately account for Mr. Ledbetter's limitation in concentration, persistence, or pace either in the RFC assessment or in the hypothetical question posed to the VE. ECF No. 10-1 at 7. "Moreover, he did not explain how his residual functional capacity assessment reflected moderate difficulties in concentration, persistence, or pace." *Id.* Under *Mascio* Plaintiff contends a remand is warranted.

The Commissioner claims the facts of this case are distinguishable from *Mascio*.

> [H]ere, the ALJ provided the explanation that was lacking in Mascio. Specifically, at step three, the ALJ explained that Mr. Ledbetter had moderate difficulties in concentration, persistence, or pace based on Mr. Ledbetter's testimony that he had difficulty concentrating and focusing and could not remember what he had read. The ALJ also noted that Mr. Ledbetter's medical sources characterized his memory as "good," "poor," and intermittent".

> The ALJ noted, however, that despite his moderate difficulties in concentration, persistence, or pace, Mr. Ledbetter remained able to attend college full-time and complete his coursework on time.

ECF No. 11-1 at 14-15 (citations omitted) (footnote omitted).

In *Mascio* the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task. The latter ability concerns the broad functional area of concentration, persistence, or pace. *Mascio*, 780 F.3d at 638.

The ALJ's RFC assessment and hypothetical question[7] to the VE included the ability to perform simple tasks. The ALJ provided an explanation for the inclusion of this limitation. "Though it is more than reasonable the claimant does not currently retain sufficient mental functioning to perform complex work, the undersigned finds the claimant's activities of daily living and mental status examination findings support he can perform simple, routine, unskilled work." R. at 24.

The ALJ's RFC assessment and hypothetical question to the VE did not include an inability to stay on task. *See, e.g.*, *Mason v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-3362, 2016 U.S. Dist. LEXIS 5752, at *3 (D. Md. Jan. 19, 2016) ("the claimant can occasionally make simple decisions; she is able to deal with simple routine changes in the work setting; *she is able to perform work that does not require the satisfaction of a production pace*; and she is able to perform low stress work, defined as few changes in the workplace.") (emphasis added); *Chase v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-2961, 2016 U.S. Dist. LEXIS 5283, at *3 (D. Md. Jan. 15, 2016) ("she is mentally limited to simple, routine, and repetitive tasks, in a 'low stress' job (defined as requiring no more than occasional decision making and no more than occasional changes in the work setting), *with no production rate or paced work (such as would be done on*

[7] "Is *limited to [] simple, routine, unskilled tasks*, with no more than occasional brief, superficial interaction with the public, coworkers and supervisors." R. at 49 (emphasis added).

*an assembly line)*[.]") (emphasis added); *Shirey v. Comm'r of Soc. Sec. Admin.*, No. SAG-15-261, 2015 U.S. Dist. LEXIS 152930, at *2-3 (D. Md. Nov. 10, 2015) ("she is limited to work that is simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks in a work environment *free of fast paced production requirements which is defined as constant activity with work tasks performed sequentially in rapid succession*.") (emphasis added); *Rayman v. Comm'r of Soc. Sec. Admin.*, No. SAG-14-3102, U.S. Dist. LEXIS 150765, at *3 (D. Md. Nov. 6, 2015) ("the claimant is limited to unskilled work; requires a low stress environment, such that there are few changes in the work setting and *no fast-paced or quota production standards*[.]") (emphasis added).

Although the ALJ determined Mr. Ledbetter had a moderate limitation in concentration, persistence, or pace at step three, he explained why Mr. Ledbetter's moderate limitation at step three did not translate into a limitation of Mr. Ledbetter's RFC. In reviewing the medical and non-medical records the ALJ noted Mr. Ledbetter is a full-time student enrolled in college classes. "The claimant . . . reported he spent his days going to class, visiting the library, and doing his homework." R. at 22. While seeking vocational services Mr. Ledbetter reported struggling with his classes and seeking assistance from a tutor. Nevertheless, Mr. Ledbetter was up-to-date with his classes and always submitted his assignments on time. *See id.* Furthermore, the vocational services consultant remarked Mr. Ledbetter was very selective in choosing jobs to apply for and found, as a result, this limited Mr. Ledbetter's opportunities. *See* R. at 448, 509. Based on this additional fact the ALJ noted,

> [W]hile the undersigned is sympathetic over the claimant's inability to obtain employment in his chosen vocational field in his local area, the undersigned[] finds the claimant's very pursuit of employment and utilization of vocational services to try to obtain employment a factor diminishing the overarching alleged [statements] of credibility. Essentially, the undersigned finds it to

> be a pseudo acknowledgement by the claimant that he does retain the ability to perform substantial gainful activity or at the very minimal, it is an acknowledgement that he retains significant functioning in his ability to perform basic work-related activities.

R. at 23. After reviewing all the evidence of record the ALJ found, "[i]n sum, the claimant's relatively good physical examinations, mental status examinations, good activities of daily living, and *ability to successfully function as a full-time college level student* do not support the degree of limitation alleged." *Id*. (emphasis added). The ALJ provided an explanation for not considering Mr. Ledbetter's moderate limitation as to concentration, persistence, or pace in the RFC assessment and in his hypothetical question to the VE as mandated by *Mascio* thus curing any error. A remand therefore is not warranted.

5. **Conclusion.**

Substantial evidence supports the decision that Mr. Ledbetter is not disabled. Accordingly, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

Date: March 31, 2016

/s/
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE